UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA

        -v-

                                                      21 CR 101 (JFB)

LENIZ ESCOBAR,

            Defendant.
------------------------------------------------------x

# DEFENDANT LENIZ ESCOBAR'S
# MOTIONS *IN LIMINE*

                                      JESSE M. SIEGEL
                                      *Attorney of Record for*
                                      *Defendant Leniz Escobar*
                                      299 Broadway, Suite 800
                                      New York, NY 10007
                                      212-207-9009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

        -v-                                        21 CR 101 (JFB)

LENIZ ESCOBAR,

                Defendant.
-------------------------------------------------------x

## DEFENDANT LENIZ ESCOBAR'S
## MOTIONS *IN LIMINE*

Defendant Leniz Escobar submits these motions *in limine* to preclude the government from introducing certain items of evidence. Ms. Escobar asks the Court to 1) strike the nickname "Diablita" from the indictment and preclude its introduction and reference at trial (Fed. R. Evid. 403, Fed. R. Crim P. 7(d)); 2) preclude and/or limit the introduction of graphic crime scene photos (Fed. R. Evid. 403); and 3) preclude the introduction of tapes and transcripts of phone calls intercepted on April 10, 2020 (Fed. R. Evid. 403 and 404(b)).

For the reasons outlined below, the Court should grant Ms. Escobar's motions, as the items have little probative value, are unduly prejudicial, will only cause confusion, will likely result in spending an inordinate amount of time on matters that are not essential to the case at bar, and are only sought to be introduced to show Ms. Escobar's propensity to commit the charged crimes.

**A. Applicable Law – FRE 403.**

Federal Rule of Evidence 403 provides for the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following:

unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see*, United States v. Massino, 546 F.3d 123 (2d Cir. 2008). The Supreme Court has observed that "[t]he term 'unfair prejudice' . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997). The question is not whether the evidence is suggestive of guilt--as all relevant evidence offered against a defendant is intended to suggest guilt--but rather, whether "it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980). This "adverse effect" may consist of a "tendency of the evidence [in question] to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." Id.

Although the law presumes that juries follow limiting instructions, United States v. Snype, 441 F.3d 119, 129 (2d Cir.2006), these instructions only minimize the evidence's prejudicial effect, Figueroa, 618 F.2d at 943. A limiting instruction "does not invariably eliminate the risk of prejudice notwithstanding the instruction." Id.

**B. Motion to Strike the Nickname, "Diablita."**

The indictment alleges that Ms. Escobar is "also known as 'Diablita," (Spanish for "Little Devil"). She was not generally known by this nickname, referred to as "Diablita," or addressed as such. Where she has been identified by witnesses, it has generally been by her first name, Leniz. For this reason, the nickname has little, if any, probative value. At the same time, and for

obvious reasons, the nickname is extremely prejudicial, with its implication that Ms. Escobar, like the Devil, is inherently evil, and thus capable of committing the crimes charged.

In addition, the nickname has been attributed to her in the prejudicial, pre-trial publicity cited in Ms. Escobar's motion for a change of venue. An article in Newsday on February 3, 2021, attached hereto as Exhibit A, identified her by both her name and the nickname, and noted, "prosecutors said [she] was given her nickname – Spanish for 'Little Devil' – by the gang …" As recently as two days ago, a December 18th article in Newsday, attached hereto as Exhibit B, reporting the guilty plea entered by Alexis Hernandez in a related case, said, "Another defendant, Leniz Escobar, whose alleged street name is 'Diablita,' is scheduled for trial on Jan. 10." Use of the nickname would be additionally prejudicial, as it would only increase the likelihood that potential jurors will have already formed opinions about her and her guilt.

Upon a defendant's motion, a court may strike surplusage from an indictment or information. Fed R. Crim P. 7(d). A motion to strike surplusage from an indictment may be granted where challenged allegations are "not relevant to the crime charged and are inflammatory and prejudicial." United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990) (quoting United States v. Napolitano, 552 F.Supp. 465, 480 (S.D.N.Y. 1982) (citing authorities). A district court may strike surplusage from an indictment if it is "immaterial, irrelevant or apt to convey prejudicial or inadmissible material to the jury." United States v. Ostrer, 481 F. Supp. 407, 419 (S.D.N.Y. 1979)

Aliases may be stricken when their use is clearly excessive or when they are not necessary for identification of a defendant at trial. United States v. Caesar, 368 F. Supp. 328 (E.D. Wis. 1973). Here, use of the alleged nickname, "Diablita," is not necessary for an identification of Ms. Escobar. In fact, in reviewing the discovery, 3500 materials, and other

3

documents, we have not come across any instance where somebody identified her by using the nickname, "Diablita." And, even if someone were familiar with the nickname, its use would only be "necessary" to identification if he or she only knew Ms. Escobar by the nickname, or if there was evidence that could only be connected to Ms. Escobar by use of the nickname – for example, a piece of evidence labeled, "Diablita." We are not aware of any such witnesses or evidence.

Here, a nefarious and prejudicial connotation for the nickname "Diablita" is inevitable. Some jurors will infer that a person nicknamed "Diablita" is more likely to have committed the crimes alleged simply from the nickname, a conclusion that is not warranted. Indeed, the name itself conjures up religious overtones, where the mere image of the Devil can inflame the passions of certain jurors.

Whether analyzed as surplusage in the indictment, or under rule 403, the Court should strike the nickname from the indictment and preclude the government from any reference to it at trial, as it is not necessary for identification purposes, has little or no probative value, is highly prejudicial, and will serve only to confuse jurors.

**C. Motion to Preclude and/or Limit the Introduction of Graphic Crime Scene Photos.**

We expect the government will seek to introduce crime scene photos that are particularly graphic and will undoubtedly disturb and inflame the jurors. We ask the Court to exclude and/or limit the introduction of the more graphic photos. First and foremost, they are of limited relevance, as they do not prove or disprove any fact in controversy, and will only serve to inflame the passions of the jurors. There is no dispute that four individuals were killed. There is likewise no dispute that they were killed with blunt force trauma. As there is no genuine dispute surrounding these issues, the photographs are not relevant. Moreover, some of the photos are

particularly graphic and will serve no other purpose than to disturb and inflame the passions of the jurors. Evidence is unfairly prejudicial when "it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." United States v. Massino, 546 F.3d 123, 132 (2d Cir. 2008).

Because the probative value of the photos concerning facts in issue would be substantially outweighed by their prejudicial impact, Fed. R. Evid, 403, we ask the Court to preclude the use of these photos at trial, or at least limit the number of photos and preclude the more graphic ones.

**D. Motion to Preclude the Introduction of Recordings and Transcripts of Phone Calls Intercepted on April 10, 2020 (Fed. R. Evid. 403 and 404(b)).**

The government has disclosed six recordings and transcripts of intercepted conversations recorded on April 10, 2020. (The transcripts are attached hereto as Exhibits C through H.) These conversations were recorded three years after the events in the indictment occurred, do not refer to any of the criminal activity in the indictment, and do not involve any of the same parties in the indictment, other than, allegedly, Ms. Escobar. As such, this Court must preclude their introduction at trial. Because they are not part of the offense, they can only be introduced pursuant to FRE 404(b)[1].

Rule 404(b) allows the introduction of evidence of other acts and crimes to prove things other than a defendant's criminal propensity. Rule 404(b)'s non-exhaustive list of purposes for which such evidence may be admitted include proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. The Second Circuit has adopted an

---

[1] The government has indicated it does not consider the evidence to be 404(b) evidence, but rather evidence of the enterprise.

inclusionary or positive approach to the rule; as long as the evidence is not offered to prove propensity, it is admissible. United States v. Edwards, 342 F.3d 168, 177-78 (2d Cir.2003). Even under this approach, however, district courts should not presume that such evidence is relevant or admissible. United States v. Halper, 590 F.2d 422, 432 (2d Cir.1978)

It is axiomatic that evidence is admissible, whether as substantive evidence or under Federal Rule of Evidence 404(b), only if it is "relevant to some disputed issue in the trial." United States v. Figueroa, 618 F.2d 934, 939 (2d Cir.1980). Where a defense does not contest an element of an offense, the Government may not use 404(b) evidence to prove that element. See United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir.1992); United States v. Colon, 880 F.2d 650, 656-57 (2d Cir.1989); United States v. Ortiz, 857 F.2d 900, 903-04 (2d Cir.1988); Figueroa, 618F.2d at 942.

The government must explain in detail the purposes for which the evidence is sought to be admitted. Id. When the Court has determined that the evidence is admissible under Rule 404(b), it must then balance the probative value of the evidence against its prejudicial impact to determine if the evidence is excludable under Rule 403. United States v. Benedetto, 571 F.2d 1246, 1248 (2d Cir.1978). As a final protection against unfair prejudice to the defendant, the court, upon request, must instruct the jury that it must only use the evidence of other acts for the purposes for which it was offered and not as an indication of criminal propensity. Fed.R.Evid.105.

Thus, the Second Circuit directs trial courts to conduct a three-part inquiry into the admissibility of other acts evidence under Rule 404(b). The court must consider whether (1) evidence was offered for a proper purpose; (2) it was relevant to a disputed trial issue; (3) its probative value is substantially outweighed by its possible prejudice. If admitted, the trial court

must administer an appropriate limiting instruction if one is requested. United States v. McCallum, 584 F.3d 471, 475 (2d Cir.2009) (citing Huddleston v. United States, 485 U.S. 681, 691–92 (1988).

The Second Circuit has also cautioned against introduction of 404(b) evidence, as it shifts the burden of proof to the defendant to prove she did not commit uncharged acts or crimes, lest she be convicted because of her alleged participation in uncharged crimes, rather than because the government has proven the charges in the indictment beyond a reasonable doubt. See United States v. Mohel, 604 F.2d 748, 751 (2d Cir. 1979) (internal citations omitted). The danger of such proof is that it will become the proverbial "tail which wags the dog." United States v. Fortenberry, 860 F.2d 628, 632 (5th Cir. 1988).

Evidence is unfairly prejudicial when "it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." United States v. Massino, 546 F.3d 123, 132 (2d Cir. 2008). If the other acts tend to prove a fact not in issue or "to excite emotions against the defendant," they create a prejudicial effect. United States v. Figueroa, 618 F.2d 934, 943 (2d Cir.1980). The district court abuses its discretion when it admits "other act" evidence with a high possibility of jury misuse but with only slightly more probative value than other evidence on the same issue. See McCallum, 584 F.3d at 477.

The Second Circuit has held that "if the evidence is offered to prove the defendant's knowledge or intent, the offer of similar acts evidence should await the conclusion of the defendant's case and should be aimed at a specifically identified issue." United States v. Colon, 880 F.2d 650, 660 (2d Cir.1989) (quoting United States v. Figueroa, 618 F.2d at 929). There is an exception "in cases where there [is] no doubt that the issue of intent would be disputed." Id. at 660.

Simply put, knowledge and intent are usually not relevant until the defendant has "opened the door" and made it an issue. Even if knowledge and intent do become an issue, the government must still establish the relevance of the evidence to the issue in dispute. United States v. Garcia, 291 F3d 127, 137 (2d Cir. 2002).

Importantly, the government may not invoke Rule 404(b) and proceed to offer, carte blanche, any prior act of the defendant in the same category. United States v. Garcia, 291 F3d at 137. The government must identify a similarity or connection between the two acts that makes the [similar] act relevant to establishing knowledge of the current act. Id.

1. **The calls are not relevant.**

First, the phone calls are not relevant. The phone calls were intercepted years after the events in the indictment occurred and they do not pertain to the events charged in the indictment. They do not involve individuals charged in the indictment (other than, allegedly, Ms. Escobar). There is no discussion of the events or individuals charged in the indictment nor is there discussion of the alleged victims. While the calls purport to involve individuals who may be tied to MS-13, there is absolutely no connection to the charges in the indictment.

2. **Any probative value is outweighed by prejudice.**

Since there is no connection to the crimes charged in the indictment, the Court should not entertain introduction of these phone calls unless and until the government has "explain[ed] in detail the purposes for which the evidence is sought to be admitted. Figueroa, 618F.2d at 942.

If the government seeks to introduce this evidence to show that Ms. Escobar is an associate of MS-13, then it should be excluded because it has very limited probative value that

8

will certainly be outweighed by prejudice to the defendant. Specifically, while the indictment may be couched as a RICO enterprise case, it is really about the murder of four individuals. If the government is allowed to introduce these phone calls into evidence, there is a real chance that Ms. Escobar could be convicted without any real evidence of her involvement in the events charged in the indictment, but only based on association with MS-13.

This evidence will certainly shift the burden of proof to Ms. Escobar to prove she did not commit uncharged acts, "lest [s]he be convicted because of h[er] alleged participation in uncharged crimes, rather than because the government has proven the charges in the indictment beyond a reasonable doubt." See United States v. Mohel, 604 F.2d 748, 751 (2d Cir. 1979) (internal citations omitted). It will most certainly become the proverbial "tail which wags the dog." See United States v. Fortenberry, 860 F.2d 628, 632 (5th Cir. 1988).

In addition, because the calls occurred three years after the events charged in the indictment, and have no connection to the events in the indictment, the calls will only confuse the jurors and create collateral issues with no bearing on whether Ms. Escobar participated in the crimes charged in the indictment.

## CONCLUSION

For the forgoing reasons, we ask the Court to grant Ms. Escobar's motions *in limine* in their entirety.

Dated: New York, New York
December 20, 2021

Respectfully submitted,

JESSE M. SIEGEL
*Attorney of Record for*
*Defendant Leniz Escobar*
299 Broadway, Suite 800
New York, NY 10007
212-207-9009