U.S. Department of Justice

United States Attorney
Eastern District of New York

JLG/PGS/MEF
F. #2021R00153

610 Federal Plaza
Central Islip, New York 11722

January 22, 2022

**FILED <u>EX PARTE</u> & UNDER SEAL**

<u>By Hand</u>

The Honorable Joseph F. Bianco
United States Circuit Judge
United States Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York 11722

       Re:   <u>United States v. Leniz Escobar</u>, 21 CR 101 (JFB)

Dear Judge Bianco:

      The Government respectfully submits this letter to advise the Court that the Government is in possession of a certain discoverable recording – specifically, a body-wire recording capturing a conversation between a lay-witness confidential informant and the defendant on April 21, 2017 – that it does not intend to utilize at trial in this matter, nor produce to the defense, for the reasons set forth below. In order for the Court to properly assess the Government's disclosure obligations and consider its position with respect to this recording, the Government respectfully requests that this Court review the recording itself, along with a draft translated transcription of the recording, *in camera*. <u>See</u> <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 61 (1987) (where psychiatric, investigative or medical information is privileged or confidential, it is to be turned over to the trial court for *in camera* review to balance the needs of the defendant and the state or individual's need to keep those records private).

      By way of brief contextual background, on April 15, 2017 – approximately four days after the murders with which the defendant is charged occurred – an individual named ███████████████████████ voluntarily provided information to the Suffolk County Police Department ("SCPD") concerning the defendant. In substance and in part, ███████ informed the SCPD that the defendant sought his help to locate a cellphone in a park in Central Islip, where, during the search for the phone, he saw blood and a piece of a brain; that he saw blood on the defendant's white sweater; that the defendant told him, using

coded language, that four individuals were dead, and that one had gotten away; and that she was concerned that someone, specifically ▓▓▓▓▓▓ would talk to the police. Following this initial meeting, law enforcement continued to meet with, and debrief, ▓▓▓▓▓▓ on several more occasions.[1] Finally, on April 21, 2017, at the direction of the Federal Bureau of Investigation ("FBI"), ▓▓▓▓▓▓ was outfitted with a body-wire, and instructed to speak with the defendant about the murders. This recording is enclosed herewith as Exhibit A, and, as it is in Spanish, a draft translated transcription of the recording is attached hereto as Exhibit B.

"Typically, the prosecution itself makes the initial determination as to what evidence must be disclosed to the defense." United States v. Leung, 40 F.3d 577, 582 (2d Cir. 1994). "To the extent that there is a question as to the relevance or materiality of a given group of documents, the documents are normally submitted to the court for *in camera* review." United States v. Wolfson, 55 F.3d 58, 60 (2d Cir. 1995). "[T]he purpose of *in camera* inspection is to supplement the Government's assessment of materiality with the impartial view provided by the trial judge." Leung, 40 F.3d at 583. This procedure protects a defendant's interests while maintaining "the government's legitimate right to protect the confidentiality of its agents' records." United States v. Preldakaj, 456 F. App'x. 56, 59 (2d Cir. 2012) (summary order); see also Leung, 40 F.3d at 582 (defendant's right to "obtain material impeachment evidence" is "amply protected" when a district court conducts an "independent *in camera* review of relevant [g]overnment files to determine materiality"); Wolfson, 55 F.3d at 60 ("[*In camera*] review preserves the confidentiality of those documents that the court determines need not be disclosed to the defendant."). See also Contreras v. Artus, 778 F.3d 97, 114 (2d Cir. 2015) (although "*ex parte* proceedings are generally discouraged," the Second Circuit has permitted and even "encourage[d]" them, as it "ensure[s] the disclosure of exculpatory evidence while preserving the confidentiality of those documents that the court determines need not be disclosed.").

The Government respectfully submits that countervailing safety concerns for ▓▓▓▓▓▓ outweigh the need for the defendant or her counsel to be made aware of this recording, let alone to obtain the recording itself; and that the Government does not have an obligation to produce the recording in any event.

*First* and foremost, ▓▓▓▓▓▓ is not a member or associate of the MS-13, and has no criminal exposure in connection with the charges in the instant matter. He is merely a lay witness, who voluntarily provided information to law enforcement about the defendant during the nascent stages of the investigation into the four murders, and who was tasked by law enforcement with engaging the defendant in a recorded conversation about the murders.

---

[1] To be clear, the instant motion pertains only to the body-wire recording and its translation/transcription, including the fact of its existence. The Government intends to produce to the defense – under an appropriate protective order, and at the time of its production of other Jencks Act, 18 U.S.C. § 3500, material – the notes, statements, and reports of ▓▓▓▓▓▓ meetings and debriefings with law enforcement in April 2017, even though he will not be called as a witness at trial.

2

He still lives in Suffolk County, and has applied for the S Visa program. To date, the Government has made no disclosures to the defense concerning his involvement in this investigation; and the Government has no reason to believe that the defense is otherwise aware that he provided information to law enforcement, or that he recorded the defendant at the direction of law enforcement. Moreover, as noted above, the Government does not intend to call ▇▇▇▇ as a witness at trial in this matter, or to use (or reference) the recording he created in any way at trial.

*Second*, although the recording may be relevant, the Government respectfully submits that it is not material. Specifically, the recording – which is a conversation between only the defendant herself and ▇▇▇▇ – contains, at best, inculpatory statements made by the defendant,[2] which support the narrative and information that had previously been provided to law enforcement by ▇▇▇▇ Nothing in the recording, the Government respectfully submits, can be construed as being favorable to the defendant. See Fuentes v. T. Griffin, 829 F.3d 233, 245-46 (2d Cir. 2016) (discussing duty to disclose and materiality). And nothing in the recording could be used for impeachment purposes by the defense – ▇▇▇▇ himself is not being called as a witness, nor does he relay, in the recording, the statements or actions of any other testifying witness. Therefore, the Government respectfully submits that it has no duty to disclose the recording to the defense, either pursuant to the Jencks Act, 18 U.S.C. § 3500, or pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.

*Finally*, although in the coming months it will become clear to the defense that ▇▇▇▇ in fact spoke with law enforcement and provided some information about the defendant – as others did – the Government submits that his recording her, while ostensibly giving her safe haven in his home in Islandia, is different – or at least evinces a heightened level of betrayal that will be viewed differently by the defendant and the MS-13. As the Court is aware, the MS-13 operates under a credo that demands retaliation against those who cooperate with law enforcement. A lay-witness informant like ▇▇▇▇ would quickly and easily be targeted by the gang for his assistance to law enforcement; but, the fact that his assistance ultimately went above-and-beyond the more commonplace call to CrimeStoppers or a meeting or two with the police to provide historic information, is likely to make him a significantly more compelling target.

For the forgoing reasons, the Government respectfully submits that it is appropriate not to disclose the recording, or the fact of its existence, to the defense. Finally, because this request identifies a specific confidential informant, who is not yet known to the defense, and requests the Court's review of materials that the Government is seeking to

---

[2] The Government acknowledges that the statements of the defendant in this recording are not particularly explicit or clear on their face, and would require some explanation and context. However, even viewing these statements in a vacuum, the Government submits that there is nothing exculpatory that would necessitate notice or a disclosure to the defense.

3

withhold from the defense, the Government respectfully requests that this letter, and its attachments, be filed under seal.

        Should the Court require any additional materials or information with respect to the instant request, please do not hesitate to contact the undersigned counsel.

        Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ Justina L. Geraci
Justina L. Geraci
Paul G. Scotti
Megan E. Farrell
Assistant U.S. Attorneys
(631) 715-7835

Enclosures.