FILED
CLERK
11/15/2024 4:34 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

№ 21-CR-101 (JFB)

---

UNITED STATES OF AMERICA,

VERSUS

LENIZ ESCOBAR,

Defendant.

---

**MEMORANDUM AND ORDER**
November 15, 2024

---

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

On February 25, 2021, Leniz Escobar ("Escobar") was charged with one count of racketeering in connection with her association with, and participation in the affairs of, a criminal enterprise, in violation of 18 U.S.C. §§ 1962(c) and 1963, and four counts of murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2. (Dkt. No. 1.) The charges stemmed from her alleged association with the La Mara Salvatrucha ("MS-13") gang, through which she was accused of participating in the murders of Justin Llivicura, Michael Lopez, Jorge Tigre, and Jefferson Villalobos in a wooded area in Central Islip, New York on April 11, 2017.[1]

On September 22, 2021, Escobar filed a motion for a change of venue pursuant to Federal Rule of Criminal Procedure 21(a), contending that negative media coverage of the MS-13, including statements made in 2017 and 2018 by then-President Trump and publicity related to the 2021 Suffolk County District Attorney race, pervaded the communities on Long Island to such an extent that she could not obtain a fair trial on Long Island or elsewhere in the Eastern District of New York. (Dkt. Nos. 24 and 40.) The government filed its opposition to the motion on October 29, 2021. (Dkt. No. 33). Escobar filed her reply on November 15, 2021. (Dkt. No. 40.) On December 3, 2021, the Court denied the motion in an oral ruling during a pretrial conference. (Dkt. No. 49.) This Memorandum and Order supplements the Court's oral ruling. Escobar has now been convicted by a jury on all counts and sentenced. (Dkt. Nos. 130, 209.)

---

[1] Escobar was indicted on these five counts along with a co-defendant, Anderson Sanchez, who pled guilty and has been sentenced. (Dkt. Nos. 48, 174.)

I. BACKGROUND

In support of her motion, Escobar submitted numerous exhibits consisting of news articles, press releases, and demonstrative search results of publicity concerning the MS-13, this case, immigration issues, and the 2021 Suffolk County District Attorney race.

Several of the exhibits are a series of news articles published in *The New York Times* in 2017 regarding the Trump Administration's law enforcement priorities related to the MS-13 and immigration, including press coverage of then-President Trump's visit to Long Island in July 2017 to discuss his Administration's approach to reducing MS-13 violence. (Dkt. No. 24, Exs. B, C, D, E (24-5, 24-6, 24-7, 24-8).) Two exhibits present search results for general database searches of news articles related to MS-13 gang violence, which indicate the existence of ongoing local press coverage. (Dkt. No. 40, Exs. H, I (40-8, 40-9).) Another article published in *Newsday* in May 2021 presents two perspectives on the influx of immigrants, particularly student-aged children, from Central America to Long Island. (Dkt. No. 24, Ex. I (24-12).) An October 2020 *Gothamist* article reflects on the Trump Administration's impact on MS-13 gang activity, and in Latino communities on Long Island. (Dkt. No. 40, Ex. A (40-1).)

Other exhibits contain a series of *Newsday* articles summarizing court proceedings in this case, including the substance of Escobar's indictment, the juvenile waiver hearing and ruling, and scheduling updates, as well as the substance of related guilty pleas and sentencing hearings in other prosecutions. (Dkt. No. 24, Exs. F, G, H, K (24-9, 24-10, 24-11, 24-14).) Another exhibit contains two press releases from August 20, 2018 and September 21, 2018, respectively, by the United States Attorney's Office for the Eastern District of New York relating to the plea agreements of defendants convicted of the same underlying crimes for which Escobar had been indicted. (Dkt. No. 24, Ex. J (24-13).) In these articles and the press releases, some details of the underlying crime are described. These articles are mostly neutral reports of the criminal proceedings of individuals other than Escobar. Escobar, however, takes issue with statements attributed to Federal Bureau of Investigations ("FBI") Assistant Director-in-Charge William Sweeney in the August 2018 press release, stating "[w]hether young or old, the savagery of MS-13 gang members remains the same," and in the September 2018 press release, "[m]ost 15-year-olds are worried about a chemistry test at school or making the football team, not plotting a grotesque attack and murder of four other teenagers." (Dkt. No. 24, Ex. J (24-13).)

Only one of the aforementioned news articles mentions Escobar by name. Specifically, a February 2, 2021 *Newsday* report describes the substance of the charges against Escobar as outlined in the indictment, and discusses this Court's ruling transferring Escobar to adult status. (Dkt. No. 24, Ex. G (24-10).)[2] Escobar particularly objects to the article's use of an alias—"Diablita," meaning "Little Devil"—used in the government's indictment. *Id.* The article also notes that the government claims that the alias was given to her by the gang. *Id.* The exclusion of that alias at trial was also the subject of a defense motion *in limine*.[3]

---

[2] Escobar attaches this same article as a different exhibit to her reply brief as one of the articles contained in Exhibit A to Dkt. No. 40 (40-1).

[3] On February 22, 2022, the Court denied Escobar's motion *in limine* to exclude references to that alias at trial. (Dkt. No. 78.)

Finally, a series of exhibits involve the 2021 Suffolk County District Attorney's race, including a campaign flyer, and local press coverage in the *Suffolk Times*, Long Island News 12, *Smithtown Matters*, and the *Long Island Press* that focus on each candidate's record on MS-13 gang prosecutions. (Dkt. No. 40, Exs. B, D, E, F, G (40-2, 40-4, 40-5, 40-6, 40-7).) Escobar points to a statement made by then-incumbent District Attorney Tim Sini, who touted his record of "arresting nearly 100 MS-13 members." (Dkt. No. 40, Ex. D (40-4).) Escobar argues that touting arrests, rather than successful prosecutions or convictions, demonstrates the existence of prejudice in the community. Escobar also points to an October 15, 2021 article published by Long Island News 12 reporting that then-candidate for, and now current, District Attorney Ray Tierney had challenged Sini's record on MS-13 prosecutions. (Dkt. No. 40, Ex. E (40-5).) Along these lines, the October 20, 2021 *Smithtown Matters* article specifically refers to the "murderous activities of the MS-13 gang" as a key issue in the race. (Dkt. No. 40, Ex. F (40-6).) Finally, after the election, a November 3, 2021 *Long Island Press* article described MS-13 prosecutions as one of the important issues in the election. (Dkt. No. 40, Ex. G (40-7).) Escobar argues that these articles were aimed at "the general negative public sentiment felt on Long Island about suspected MS-13 gang members." (Dkt. No. 40 at 5.)

II. STANDARD OF REVIEW

A. The Constitutional Standard

"The Sixth Amendment secures to criminal defendants the right to a trial by an impartial jury." *Skilling v. United States*, 561 U.S. 358, 377 (2010); *see* U.S. CONST. amend. VI. Although the Constitution provides that criminal trials shall be held in the state and district where the crimes were committed, *see* U.S. CONST. ART. III, § 2, cl. 3 & amend. VI, "[t]he Constitution's place-of-trial prescriptions . . . do not impede transfer of the proceeding to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial—a 'basic requirement of due process.'" *Skilling*, 561 U.S. at 378 (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).

Where a defendant raises a constitutional challenge to the venue of her trial before jury selection, she "must make a showing of presumed prejudice, arising when 'prejudicial publicity so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community.'" *United States v. Volpe*, 42 F. Supp. 2d 204, 216 (E.D.N.Y. 1999) (quoting *Mayola v. Alabama*, 623 F.2d 992, 997 (5th Cir. 1980)). For instance, in *Rideau v. Louisiana*, the defendant's taped confession to murder, kidnapping, and armed robbery was broadcasted three times to audiences of 24,000 to 53,000 people. 373 U.S. 723, 724–25 (1963). The entire parish in which the defendant was tried contained approximately 150,000 people. *Id.* at 724. In these circumstances, the Supreme Court held that the defendant's motion for change of venue should have been granted even before jury selection because "[a]ny subsequent court proceedings in a community so pervasively exposed to such a spectacle [of a publicized confession] could be but a hollow formality." *Id.* at 726.

"A presumption of prejudice, [the Supreme Court's] decisions indicate, attends only the extreme case," such as *Rideau*, where the "trial atmosphere . . . was utterly corrupted by press coverage." *Skilling*, 561 U.S. at 380–81 (internal quotation marks, citations, and brackets omitted); *see also United States v.*

3

*Sabhnani*, 599 F.3d 215, 233 (2d Cir. 2010) (noting that cases where adverse pretrial publicity warrants a presumption of prejudice "are very rare . . . and have been characterized . . . as 'extreme situation[s]'" (quoting *United States v. Campa*, 459 F.3d 1121, 1143 (11th Cir. 2006) (en banc))). In most cases, "pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 554 (1976). "Qualified jurors need not . . . be totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421 U.S. 794, 799–800 (1975); *see also Skilling*, 561 U.S. at 360 (holding that "juror *impartiality* does not require *ignorance*" (emphasis in original)). Indeed, among Supreme Court decisions, *Rideau* stands as the only case in which the Supreme Court has "found presumptive prejudice deriving solely from pretrial publicity." *Volpe*, 42 F. Supp. 2d at 216.

B. Federal Rule of Criminal Procedure 21(a)

"Upon the defendant's motion," Federal Rule of Criminal Procedure 21(a) also requires the transfer of "the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a). "Substantial publicity alone is not enough to require a change of venue." *United States v. Stevens*, 83 F.3d 60, 66 (2d Cir. 1996). Instead, "[i]n order to prevail on a motion under Rule 21(a), the defendant must show 'a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial.'" *United States v. Maldonado-Rivera*, 922 F.2d 934, 966–67 (2d Cir. 1990) (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966)); *see also Sabhnani*, 599 F.3d at 232. Factors for a court to consider in making this decision include "the extent to which the government is responsible for generating the publicity, the extent to which the publicity focuses on the crime rather than on the individual defendants charged with it, and other factors reflecting on the likely effect of the publicity on the ability of potential jurors in the district to hear the evidence impartially," *Maldonado-Rivera*, 922 F.2d at 967, including "the size of the venue, and the amount of time that has passed since the bulk of the negative publicity," *United States v. Skelos*, 988 F.3d 645, 659 (2d Cir. 2021). "A defendant making a pre-voir dire motion to change venue is faced with a difficult burden of showing that the nature of adverse pretrial publicity is such that makes a fair trial unlikely, and thus, inherent prejudice must be presumed." *United States v. Salim*, 151 F. Supp. 2d 281, 282 (S.D.N.Y. 2001).[4] Finally, "[t]he ultimate determination of whether unfavorable publicity renders a fair trial unlikely is committed to the district court's discretion . . . ." *Maldonado-Rivera*, 922 F.2d at 967; *see also Skilling*, 561 U.S. at 378 n.11 (noting that, under Rule 21(a), "district-court calls on the necessity of transfer are granted a healthy measure of appellate-court respect").

III. DISCUSSION

Although Escobar asserts that the "volume and nature" of the press coverage related to her case and other MS-13 cases require a change of venue from Long Island, (Dkt. No. 24 at 6), the Court concludes that a

---

[4] By contrast, where a defendant moves for a change of venue during or after jury selection, a change of venue may be warranted if "answers provided in voir dire allow an inference that the panel of prospective jurors are actually prejudiced." *United States v. Livoti*, 8 F. Supp. 2d 246, 249 (S.D.N.Y. 1998).

change of venue is not warranted under the Constitution or Rule 21(a).

As an initial matter, the vast majority of the press coverage Escobar has submitted does not reference her by name. Only one news article mentions Escobar specifically, and it discusses this Court's ruling transferring her to adult status as well as the postponement of a subsequent hearing. (Dkt. No. 24, Ex. G (24-10).) Although the article references the "Diablita" alias and describes the nature of the crime, the article largely recounts this Court's decision transferring Escobar to adult status. This is the type of coverage of "actual developments in a criminal case" that "generally will not rise to the level of prejudicial publicity that will warrant a venue change." *Sabhnani*, 599 F.3d at 233. Indeed, in *Sabhnani*, the Second Circuit affirmed the district court's denial of the venue transfer motion, even though the press referred to one of the defendants as "Cruella," referencing the Disney villain Cruella de Vil, a nickname given by the tabloid and not, as here, referenced in the indictment, and also published "details of the methods that the [defendants] allegedly used to torture their victims." *Id.* at 232.

Escobar also points to articles reporting on the guilty pleas and sentencings of other individuals involved in the underlying crime for which she was ultimately convicted. Those articles mention that victims were "lured to the park by two young women," although they do not specify the names of those women. (Dkt. No. 24, Ex. K (24-14).) The Court finds that these articles, too, are "factual rather than inflammatory." *Salim*, 151 F. Supp. 2d at 283.

The press releases issued by the U.S. Attorney's Office in connection with this case regarding the guilty pleas of two other defendants, (Dkt. No. 24, Ex. J (24-13)), also do not mention Escobar by name. The statements contained therein from FBI Assistant Director-in-Charge Sweeney—specifically, the August 2018 press release stating, "[w]hether young or old, the savagery of MS-13 gang members remains the same," and the September 2018 press release stating, "[m]ost 15-year-olds are worried about a chemistry test at school or making the football team, not plotting a grotesque attack and murder of four other teenagers"—are not directed specifically at Escobar. (Dkt. No. 24, Ex. J (24-13).) Moreover, given the nature of the charged crimes in this case, there is an obvious public interest that would result in publicity, aside from any press releases issued by the government. Accordingly, the government's general statements about the MS-13 and about this case do not warrant a change of venue for Escobar's trial.

Turning to the significant coverage of the MS-13 in media, both on Long Island and nationally, as this Court has previously held, "[t]he focus on MS-13, more generally," or on "the [accused] crimes," rather than the defendant, "weighs heavily against a change of venue." *United States v. Ayala*, 64 F. Supp. 3d 446, 451 (E.D.N.Y. 2014). Along these lines, the Court similarly concludes that any general comments about the MS-13 made by government representatives, including the former United States Attorney General and then-President Trump, did not result in prejudice warranting a change of venue. In particular, the statements made by the then-President and the then-Attorney General regarding the MS-13 on Long Island are from 2017 and do not mention the defendant. (Dkt. No. 24, Exs. C, D, E (24-6, 24-7, 24-8).) Anti-MS-13 publicity from more than four years before the beginning of trial does not create a sufficient basis for change of venue. *See Skelos*, 988 F.3d at 659 (affirming denial of defendants' transfer motion based, in part, on three-year gap in

5

time between negative news coverage of defendants and trial).

As to Escobar's argument that the negative coverage of MS-13 continued and was so pervasive that "the mere allegation of affiliation with MS-13 [would] likely [] impact potential jurors' ability to be impartial," (Dkt. No. 24 at 6), this Court has held, and concludes here, that "more general news articles on gang violence or a specific gang are not so prejudicial so as to require a change of venue before jury selection," *Ayala*, 64 F. Supp. 3d at 451 (collecting cases); *see also Maldonado-Rivera*, 922 F.2d at 967 (finding change of venue unwarranted where news articles regarding the crime were "averaging slightly more than one article per week over a three-year period").

Moreover, while the vast majority of anti-MS-13 press coverage, including that related to the 2021 Suffolk County District Attorney's race, is found in local Long Island publications, particularly in *Newsday*, the jury panel for this trial is drawn "from the entire Eastern District of New York, which is comprised not only of Nassau and Suffolk Counties, but also of the boroughs of Brooklyn, Queens, and Staten Island." *United States v. Prado*, No. 10-CR-74 (JFB), 2011 WL 3472509, at *17 n.12 (E.D.N.Y. Aug. 5, 2011). As noted in *Prado*, "there are approximately eight million people residing in the Eastern District of New York," *id.* at *14, and the jury pool is "large and diverse," *id.* at *17 n.12. Given the large and diverse jury pool, Escobar's "suggestion that 12 impartial individuals could not be empaneled is hard to sustain." *Skilling*, 561 U.S. at 382 (citation omitted). That the Suffolk County District Attorney's race, and its press coverage, involved significant discussion of law enforcement efforts related to MS-13 (and not this case in particular), does not provide a sufficient basis to change venue. *See also United States v. Hadden*, No. 20-CR-468 (RMB), 2021 WL 5920504, at *8 (S.D.N.Y. Dec. 15, 2021) (concluding that media attention and political campaigning related to defendant's case in connection with the Manhattan District Attorney race was insufficient to transfer venue).

Here, the Court concludes that *voir dire* is sufficient to determine whether there is any potential prejudice towards Escobar from negative media coverage of MS-13. *See also United States v. Haig*, No. 18-CR-256 (JCM) (VCF), 2018 WL 8646839, at *6 (D. Nev. Oct. 10, 2018) ("[T]he court is not at the mercy of the media. There are available jury selection procedures to remedy the prejudicial effect of publicity."). As has been the case for many years, "high profile cases have been tried in the Southern and Eastern Districts of New York, and courts have relied on 'thorough *voir dire* examinations . . . to produce unbiased juries.'" *United States v. Awadallah*, 457 F. Supp. 2d 246, 254 (S.D.N.Y. 2006) (quoting *Volpe*, 42 F. Supp. 2d at 218). During and after *voir dire*, Escobar retains her right to raise a challenge of actual bias. *See Volpe*, 42 F. Supp. 2d at 218.

IV. CONCLUSION

As set forth orally on the record during the pretrial conference, and for the reasons set forth herein, the Court denies Escobar's motion for a change of venue.

SO ORDERED.
/s/ Joseph F. Bianco

JOSEPH F. BIANCO
United States Circuit Judge
(sitting by designation)

Dated: November 15, 2024
Central Islip, NY

6

\* \* \*

The United States is represented by Assistant United States Attorneys Paul G. Scotti, Justina L. Geraci, and Megan E. Farrell, of the United States Attorney's Office for the Eastern District of New York, 610 Federal Plaza, Central Islip, New York 11722.

Defendant Leniz Escobar is represented by N. Keith White of Keith White, PLLC, 198A Rogers Avenue, Brooklyn, New York 11225, and Jesse M. Siegel of the Law Offices of Jesse M. Siegel, 299 Broadway, Suite 800, New York, New York 10007.