FILED
CLERK
11/15/2024 4:32 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

N⁰ 21-CR-101 (JFB) (SIL)

UNITED STATES OF AMERICA,

VERSUS

LENIZ ESCOBAR,

Defendant.

**MEMORANDUM AND ORDER**
November 15, 2024

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

Defendant Leniz Escobar (the "defendant" or "Escobar") was charged with one count of racketeering, in violation of 18 U.S.C. §§ 1962(c) and 1963, and four counts of murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2. (Dkt. No. 1.)[1] The charges stemmed from her alleged association with the La Mara Salvatrucha gang ("MS-13"), through which she was accused of participating in the murders of Justin Llivicura, Michael Lopez, Jorge Tigre, and Jefferson Villalobos in a wooded area in Central Islip, New York on April 11, 2017.

In anticipation of trial, the government moved *in limine* to empanel an anonymous and partially sequestered jury. (Dkt. No. 32 ("Gov. Motion")), which the defendant opposes (Dkt. No. 39 ("Opp.")).[2] During the December 3, 2021 pretrial conference, the Court granted the motion orally. (Dkt. No. 49.) This Memorandum and Order supplements the Court's oral ruling. (Dkt. No. 54.) Escobar has now been convicted by a jury on all counts and sentenced. (Dkt. Nos. 130, 209.)

---

[1] Escobar was indicted on these five counts along with a co-defendant, Anderson Sanchez, who pled guilty and has been sentenced. (Dkt. Nos. 48, 174.)

[2] Escobar's co-defendant, Sanchez, submitted a brief in opposition to the government's motion on behalf of both Sanchez and Escobar. (Dkt. No. 39.)

I. MOTION FOR AN ANONYMOUS AND PARTIALLY SEQUESTERED JURY

The government has moved for: (1) the names, addresses, and places of employment of the prospective jurors to be withheld from the parties and their attorneys, and (2) the jurors to be directed to utilize the employee parking lot and rear entrance of the courthouse for the duration of trial. (Gov. Motion at 2.) For the reasons set forth herein and orally, the Court grants this motion in its entirety.[3]

A. Legal Standard

The Second Circuit has "made clear that when genuinely called for and when properly used, anonymous juries do not infringe a defendant's constitutional rights." *United States v. Pica*, 692 F.3d 79, 88 (2d Cir. 2012) (internal quotation marks and citations omitted). In its discretion, the Court is permitted to "order the empaneling of an anonymous jury upon (a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that [her] fundamental rights are protected." *United States v. Gotti*, 459 F.3d 296, 345 (2d Cir. 2006) (internal quotation marks and citation omitted). In assessing the appropriateness of an anonymous jury, the Court must "balance the defendant's interest in conducting meaningful *voir dire* and in maintaining the presumption of innocence, against the jury member's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict." *United States v. Amuso*, 21 F.3d 1251, 1264 (2d Cir. 1994).

1. Juror Protection

With respect to the first requirement, the need for juror protection may be satisfied by a "demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on [her] behalf or a showing that trial evidence will depict a pattern of violence by the defendant[] and [her] associates such as would cause a juror to reasonably fear for his own safety." *United States v. Vario*, 943 F.2d 236, 241 (2d Cir. 1991); *see also United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994) ("Anonymity may be warranted when the jury needs protection, as when the government has demonstrated a defendant's willingness to tamper with the judicial process, or when there has been extensive pretrial publicity in cases involving allegations of violent conduct." (alterations, internal quotation marks, and citations omitted)).

Merely invoking words such as "organized crime" or "mob" does not warrant juror anonymity. *Vario*, 943 F.2d at 241. Instead, the government must demonstrate "something more" linking the defendant to obstruction of justice since evidence of obstruction of justice "has always been a crucial factor" in justifying an anonymous jury. *Id.* at 240; *accord United States v. Quinones*, 511 F.3d 289, 295 (2d Cir. 2007) ("We have identified strong reasons to believe that a jury needed

---

[3] Because the Court's analysis is based upon the nature of the charges in this case, as well as the allegations and convictions in other MS-13 cases before this Court, and because Escobar has failed to identify any disputed facts that are dispositive to the analysis, the Court concludes in its discretion that an evidentiary hearing on the government's motion is unnecessary. *See United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995) ("The district court has discretion to determine whether or not an evidentiary hearing is needed on the government's allegations.").

2

protection in situations where the government demonstrated a defendant's willingness to tamper with the judicial process.").

However, the Court need not find "that a defendant personally intimidated or attempted to intimidate witnesses or others associated with the trial in order to empanel an anonymous jury," but rather can also examine the relevant conduct of the defendant's associates in determining whether the jury needs protection. *United States v. Napout*, 963 F.3d 163, 189–90 (2d Cir. 2020). In addition, as part of its obstruction of justice analysis, the Court is not required to find that there were prior instances of jury tampering in order to conclude that an anonymous jury is warranted. Instead, courts look broadly at any interference with the judicial process and consider all prior acts of obstruction, such as witness tampering. The Second Circuit has repeatedly endorsed taking a broader view of obstruction in this context and allowed consideration of a variety of acts that interfere with the judicial process. *See, e.g.*, *Quinones*, 511 F.3d at 295–96 (explaining that defendants' alleged murder of a confidential informant in retaliation for his cooperation with law enforcement "threatened the judicial process both by eliminating a witness who could have provided incriminating evidence against defendants and by sending a powerfully frightening message to others of the terrible consequences awaiting anyone who cooperated in defendants' prosecution," and thus, "[u]nder these circumstances, the district court acted well within its discretion in concluding that the defendants posed a substantial risk to the integrity of the judicial process warranting empanelment of an anonymous jury"); *Thai*, 29 F.3d at 801 (upholding empanelment of anonymous jury where the government argued "based in large part on evidence of defendants' acts of intimidation toward their crime victims, their attempts to kill certain of those victims, and the murder of [a victim] because of his refusal to retreat from his complaints to the police" and where the government "maintained that jurors whose identities were disclosed would be at risk because [the gang] had at least 100 members, many of whom were not in custody"); *Aulicino*, 44 F.3d at 1116 (holding empanelment of anonymous jury justified when, *inter alia*, co-conspirators attempted to influence a witness in a prior state prosecution, allegedly attempted to bribe a witness not to testify against them in their federal case, and one co-conspirator was caught on tape discussing with another co-conspirator how his father would interfere with the judicial process on his behalf).

In addition to looking at the extent to which defendants and their associates have a history of attempting to interfere with the judicial process, courts in the Second Circuit consider several other factors in analyzing the need for juror protection through the use of an anonymous jury. These factors include: the seriousness of the charged crimes, whether the defendant is accused of participating in a "large-scale criminal enterprise," the criminal history of the defendant, the means of the defendant and his or her associates to interfere with jurors, and the likelihood that the trial will garner media attention. *United States v. Wilson*, 493 F. Supp. 2d 397, 398 (E.D.N.Y. 2006); *see United States v. Blackshear*, 313 F. App'x 338, 342 (2d Cir. 2008) (summary order) ("We have identified several factors which might be considered in deciding whether to empanel an anonymous jury. Among them are (1) the defendant's capacity to threaten jurors; (2) defendant's prior attempts to interfere with the judicial process; and (3) the likelihood of publicity."). For example, in *Amuso*, the court looked to these factors to support the

3

empanelment of an anonymous jury. There, the defendant was alleged to have committed crimes of "extreme violence" as the "head of a powerful crime organization." 21 F.3d at 1264. In affirming the district court's use of an anonymous jury, the Second Circuit explained that the crimes charged demonstrated that the defendant not only had the willingness "to interfere with the judicial process by murdering government witnesses," but also "had the means to interfere with the jurors if he so desired" because he was the head of an organized crime family. *Id.* at 1264–65. Further, the Second Circuit noted that the district court did not rely solely on the defendant's affiliation with organized crime to justify the anonymous jury. Instead, this factor, "along with other evidence … provided a reasonable basis from which the trial court concluded that precautionary measures were required." *Id.* at 1265.

Similarly, in *Wilson*, the court looked to these factors to support the use of an anonymous jury where the defendant had been charged with murdering two police officers. 493 F. Supp. 2d at 399. In finding that the use of an anonymous jury was warranted, the court considered: (1) the seriousness of the offense; (2) the defendant's participation in a large-scale, violent gang that had a history of committing murder, robbery, and narcotics trafficking; (3) the fact that the gang had other members and associates who would remain at large during trial and could potentially interfere with the jury on the defendant's behalf; (4) the defendant and his associates' history of interfering with the judicial process, such as when they ordered a fellow prisoner to attack a corrections officer and coerced witnesses not to testify or cooperate with authorities; and (5) the extensive media interest in the case.[4] *Id.* at 399–400.

2. Precautions to Minimize Prejudice

Once the Court determines that there is a strong reason to believe the jury needs protection, the Court must then take reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that her fundamental rights are protected. *Paccione*, 949 F.2d at 1192. A "court minimizes the prejudicial effects of an anonymous jury on the defendant by giving the jurors a plausible and nonprejudicial reason for not disclosing their identities and by conducting a *voir dire* designed to uncover bias." *Napout*, 963 F.3d at 188–89 (internal quotation marks and citation omitted); *see also Quinones*, 511 F.3d at 296 ("The district court's *voir*

---

[4] Although it is unclear whether factors such as the seriousness of an offense or extensive pretrial publicity would, alone, support empaneling an anonymous jury, the cases cited *supra*, and others in this Circuit, demonstrate that such factors are relevant when considered together or in conjunction with evidence of a defendant's willingness or ability to tamper with the judicial process. *See, e.g., Quinones*, 511 F.3d at 296 ("Two other grounds cited by the government—the seriousness of the crime and the likelihood of pre-trial publicity—reinforce the district court's decision to empanel an anonymous jury."); *Thai*, 29 F.3d at 801 (empaneling of anonymous jury was appropriate where, *inter alia*, the gang "had at least 100 members, many of whom were not in custody"); *United States v. Paccione*, 949 F.2d 1183, 1192–93 (2d Cir. 1991) (upholding juror anonymity given, *inter alia*, "the serious nature of the charges and the potential for long prison terms and high monetary penalties," defendants' membership in and strong ties to organized crime, their alleged involvement in the murder of a co-defendant, and their other acts of witness tampering).

4

*dire* was sufficiently detailed to compensate for jury anonymity, and the court couched its jury instruction regarding anonymity in such a way as to avoid intimating that defendants posed any risk to persons or to the judicial process." (citations omitted)); *United States v. Wong*, 40 F.3d 1347, 1377 (2d Cir. 1994) (finding precautions district court employed reasonable where it "questioned prospective jurors about their familiarity with the case, the defendants and the crime scenes, and inquired about their neighborhoods, marital status, employment, spouse's and children's employment, education, organizational affiliations, ethnicity, military service, and other matters," which "was more than sufficient to enable the defendants to exercise their challenges meaningfully, and to obtain a fair and impartial jury" (internal quotation marks and citation omitted)); *Paccione*, 949 F.2d at 1193 ("We see no inadequacy in the procedural precautions taken by the court to prevent prejudice to the defendants as a result of the anonymity of the jurors. Defendants do not contend that the *voir dire* was in any way inadequate. The court also adequately instructed the jury at the outset of the trial that the special precautions were designed to protect the jury from contacts by the media, thereby implying that the security measures were not the result of threats from the defendants.").

B. Application

The government has demonstrated that the empanelment of an anonymous jury is warranted here based on the need to protect the jury and the ability of the Court to minimize any prejudice to the defendant.

1. Juror Protection

Each of the relevant factors leads the Court to conclude that there is strong reason to believe the jury needs protection.

First, there is a demonstrable history of obstruction of justice on the part of both the defendant and her associates in the MS-13, who remain capable of obstructing justice and whose history of violent conduct could cause jurors to reasonably fear for their safety. Indeed, as the government explains in its motion, retribution is a key motivation of the MS-13—a motivation that could be exercised against jurors who pass judgment on the defendant or, at the very least, could result in jurors reasonably fearing such retaliation. (Gov. Motion at 5.) The indictment describes MS-13 as a "transnational criminal organization" whose members and associates engaged in "acts of violence, including murder, attempted murder, robbery, kidnapping and assault, as well as other criminal activity, including narcotics trafficking, extortion, witness tampering and witness retaliation." (Dkt. No. 1 at 1.) Its members operate throughout Central America and the United States, including on Long Island and in Queens. (*See id.*; Gov. Motion at 4.) As demonstrated by convictions in other cases in this District, MS-13 members have repeatedly demonstrated their willingness to interfere with the judicial process, such as by tampering with witnesses and retaliating against individuals they suspected had cooperated with law enforcement. *See, e.g.*, *United States v. Prado*, No. 10-CR-074 (JFB), 2011 WL 3472509, at *7 (E.D.N.Y. Aug. 5, 2011) (detailing witness tampering, witness retaliation, and conspiracy to obstruct justice by defendants and their associates in MS-13); (*see also* Gov. Motion at 6–14) (detailing sixteen instances in which MS-13 members attempted to interfere with the judicial process in the Eastern District of New York).

In this case, the defendant herself has purportedly already demonstrated a willingness to interfere with the judicial process. As one of the predicate acts of her

5

racketeering charge, she is alleged to have conspired to obstruct justice by destroying evidence. (Dkt. No. 1 at 5–6.) Although this conduct is distinct from witness tampering, as the defendant points out in her opposition brief, (Opp. at 3), it still demonstrates a willingness to interfere with the judicial process. Furthermore, this alleged obstruction must be analyzed in the context of the defendant's association with MS-13, an organization with a long history of interfering with the judicial process. According to the government, following the alleged murders and while in custody, the defendant has continued to associate with known MS-13 members, many of whom remain at liberty and are capable of interfering with the trial. (Gov. Motion at 20.) The defendant's own alleged conduct in obstructing justice and her willingness to associate with the MS-13 enterprise strongly support the empanelment of an anonymous jury. *See, e.g., United States v. Tutino*, 883 F.2d 1125, 1132–33 (2d Cir. 1989) (empaneling anonymous jury justified where defendants had serious criminal records and personal history of jury tampering, as evidenced by affidavits submitted by three jurors approached in connection with prior narcotics case); *Wilson*, 493 F. Supp. 2d at 400 ("The [affidavit submitted by the government] attests to the Defendant's and his associates' history of interference with the judicial process. Specifically, while the Defendant was in state custody . . . [defendant] ordered another prisoner to attack a corrections officer and the other prisoner did so. Moreover, there are instances of [defendant's] criminal associates having attempted to coerce witnesses not to testify or cooperate with authorities . . . . This history of interference with the judicial process also warrants the use of an anonymous, semi-sequestered jury, as requested by the Government." (internal quotation marks and citation omitted)).

Although the prior attempts of MS-13 members to interfere with judicial proceedings involved witness, rather than jury, tampering, the Court still finds that an anonymous jury is warranted here. As noted *supra*, a history of witness tampering can provide support for empanelment of an anonymous jury because such conduct demonstrates a general willingness to interfere with the judicial process. *See, e.g., Quinones*, 511 F.3d at 295–96; *see also Blackshear*, 313 F. App'x at 343 ("Although none of [defendant's] prior incidents involved jurors, he consistently attempted to obstruct justice—by bribing witnesses and by intimidating witnesses . . . . It does not seem unreasonable to infer that jurors might also be threatened.").

The defendant argues that, in analyzing her association with MS-13, the Court must consider that she is not a leader in the organization. (Opp. at 3.) However, the defendant's relative lack of seniority in MS-13 does not foreclose the organization from attempting to interfere on her behalf in the administration of justice. *See, e.g., United States v. Young*, 385 F. App'x 12, 14 (2d Cir. 2010) (summary order) ("Although Young was apparently a low-level figure in the Bonanno organization, and the district court acknowledged that it was therefore unclear precisely what duty the family owed to [him] . . . and to what lengths the family might go in order to assist him, . . . the government made a sufficient showing of the Bonanno organization's willingness to subvert the judicial process." (internal quotation marks and citation omitted).

Based on the foregoing, the government has sufficiently alleged "something more" beyond a mere link between the defendant and MS-13's organized criminal activity. Instead, the government has shown "a demonstrable history or likelihood of obstruction of justice on the part of the

defendant or others acting on [her] behalf [and] a showing that trial evidence will depict a pattern of violence by the defendant[] and [her] associates such as would cause a juror to reasonably fear for his own safety." *Vario*, 943 F.2d at 241. Therefore, the Court concludes that there is a "strong reason to believe the jury needs protection" in this case. *United States v. Stewart*, 590 F.3d 93, 124 (2d Cir. 2009); *see United States v. Thomas*, 757 F.2d 1359, 1364–65 (2d Cir. 1985) ("The circumstances of this case support the trial judge's decision to impanel an anonymous jury. The defendants were alleged to be very dangerous individuals engaged in large-scale organized crime who had participated in several 'mob-style' killings. Charges in the indictment accused defendants of attempts to interfere with the judicial process by murdering government witnesses . . . . [T]here was strong evidence of defendants' past attempts to interfere with the judicial process, and defendants were alleged to be part of a group that possessed the means to harm jurors.").

Other relevant factors similarly support the empanelment of an anonymous jury in this case. The defendant is accused of participating in four murders and conspiring to obstruct justice. (Dkt. No. 1.) These charges certainly constitute "serious crimes" and strongly weigh in favor of an anonymous jury. *See, e.g., Quinones*, 511 F.3d at 296 ("[T]he seriousness of the crime . . . reinforce[s] the district court's decision to empanel an anonymous jury."); *Wilson*, 493 F. Supp. 2d at 399 ("[T]he Defendant is charged with intentionally murdering two police officers in an attempt to obstruct justice. These charges are of the utmost seriousness, indeed as serious as any charge can be, and demonstrate both the extreme dangerousness of the defendant and a willingness to obstruct justice. Based on these charges alone, I would seriously consider empaneling an anonymous jury."); *United States v. Suarez*, No. 16-CR-403 (JFB), 2020 WL 7699663, at *5 (E.D.N.Y. Dec. 28, 2020) ("As an initial matter, these are plainly serious charges—the majority of which involve the use of violence—which support the Court's conclusion that the use of an anonymous jury is appropriate in this case."). Although the defendant argues that she has no history of criminal activity prior to the charged crimes, (Opp. at 3), the gravity and extremely violent nature of the conduct alleged in the indictment sufficiently weigh in favor of juror protection, regardless of her lack of a criminal history.

Also relevant to the Court's analysis is the level of interest in the case from the media and prominent national and local government officials. Courts have recognized that pretrial publicity can weigh in favor of an anonymous jury because of the increased possibility that jurors' identifying information may become public and be distributed to a wider audience outside of the courtroom. *See Quinones*, 511 F.3d at 296 ("[T]he likelihood of pre-trial publicity . . . reinforce[s] the district court's decision to empanel an anonymous jury." (collecting cases)); *Vario*, 943 F.2d at 240 ("Pre-trial publicity may militate in favor of an anonymous jury because it can enhance the possibility that jurors' names would become public and thus expose them to intimidation by defendants' friends or enemies, or harassment by the public. At the time of the government's anonymous jury motion in the district court, *New York Newsday* had recently published a cover story about the case entitled *The Mob and Local 66* . . . . Although no publicity followed this initial article, we cannot say that at the time that the anonymous jury motion was made, the government's prediction that publicity would continue was unreasonable or unjustified." (internal

7

quotation marks and citation omitted)). In the years following the four murders charged in the indictment, this case has attracted widespread media attention and political commentary. *See, e.g.*, Robert E. Kessler, *Hearing postponed for woman accused in Central Islip MS-13 killings*, N.Y. Times (Feb. 2, 2021), https://www.newsday.com/long-island/crime/central-islip-community-park-ms-13-killings-1.50140309; Liz Robbins, *Trump Will Visit Long Island in the Wake of MS-13 Gang Arrests*, N.Y. Times (July 25, 2017), https://www.nytimes.com/2017/07/25/nyregion/trump-long-island-ms-13-gang.html. The Court believes that this case will continue to garner attention from the press upon commencement of the trial, thus increasing the possibility of reporting on members of the jury. This factor regarding pretrial publicity therefore weighs in favor of an anonymous jury.[5]

In sum, when considering all of these factors, the Court concludes that there is strong reason to believe that the jury needs protection and that the empanelment of an anonymous jury is warranted. *See Amuso*, 21 F.3d at 1264–65 (affirming anonymous and sequestered jury where defendant was charged with crimes of "extreme violence" and "crimes charged also showed that [the defendant] was willing to interfere with the judicial process by murdering government witnesses and, as head of the Luchese crime family, it was certainly reasonable to expect that [the defendant] had the means to interfere with the jurors if he so desired"); *United States v. Persico*, 832 F.2d 705, 717 (2d Cir. 1987) (upholding decision to empanel anonymous jury based on "the violent acts alleged to have been committed in the normal course of Colombo Family business, the Family's willingness to corrupt and obstruct the criminal justice system, and the extensive publicity this case is expected to continue to attract" (internal quotation marks and citation omitted)); *Wilson*, 493 F. Supp. 2d at 399–400 ("[I]n addition to the charges of murdering [two police officers], the indictment also alleges that the Defendant is part of a criminal enterprise known as the 'Stapleton Crew,' a violent organization that engages in acts of robbery, murder and narcotics trafficking. . . . In short, the Defendant's criminal history and his participation in a large scale criminal enterprise without question show that he is dangerous and weigh heavily in favor of using an anonymous, partially-sequestered jury in this trial.").

2. Precautions to Minimize Prejudice

Having determined that an anonymous jury is warranted, the Court must now take "reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that [her] fundamental rights are protected." *Stewart*, 590 F.3d at 124. It is well-established that "when genuinely called for and when properly used, anonymous juries do not infringe a defendant's constitutional rights." *Thai*, 29 F.3d at 800–01 (quoting *Vario*, 943 F.2d at 239). As the Second Circuit has repeatedly held, a defendant's presumption of innocence is properly maintained where a court gives a neutral and non-prejudicial explanation to jurors regarding the need for anonymity. *See, e.g., id.* at 801 ("In order to provide a

---

[5] Based on the extremely violent nature of the charged crimes, the Court finds no basis to credit the defendant's assertion that the government manufactured the pretrial publicity or that the media would not have reported on the serious charges alleged had it not been for government press releases. (Opp. at 3.) In any event, the Court concludes that the use of an anonymous jury would be warranted for the other reasons discussed *supra*, even in the absence of publicity.

8

nonprejudicial reason for maintaining anonymity, the introduction to the questionnaire stated, with the approval of the parties, that 'selecting an anonymous jury is not an unusual practice and has been followed in many cases in Federal Court. Anonymity will ward off curiosity that might infringe on a juror's privacy.' . . . [T]he court's questionnaire properly protected defendants' interests both in the selection of unbiased jurors and in the proffer of a nonprejudicial reason for the preservation of juror anonymity. We find no abuse of discretion in the use of an anonymous jury in the present case." (alterations adopted)); *Tutino*, 883 F.2d at 1133 (holding that "any risk that the empanellment [sic] of an anonymous jury might deprive defendants of the presumption of innocence was minimized by [the district court's] instructions to prospective jurors" in which the district court stated, in pertinent part, "[i]t is a common practice followed in many cases in the Federal court to keep the names and identities of the jurors in confidence. This is in no way unusual. It is a procedure being followed in this case."); *accord Paccione*, 949 F.2d at 1193. In this case, the Court finds that the instructions typically used in connection with an anonymous jury will guard against any undue prejudice or bias against the defendant.

In addition, the Court concludes that the defendant's right to a fair and impartial jury will be sufficiently protected by a careful and searching *voir dire*. This process will be designed to reveal any potential juror biases and will allow the defendant to meaningfully exercise her challenges. *See Aulicino*, 44 F.3d at 1116 (explaining that where otherwise warranted, "the use of an anonymous jury does not infringe a defendant's constitutional rights, so long as the court conducts a careful *voir dire* designed to uncover any bias as to the issues or the defendants and takes care to give the jurors a plausible and nonprejudicial reason for not disclosing their identities"); *Vario*, 943 F.2d at 241–42 ("[T]he district court conducted a searching *voir dire* which sufficiently enabled Vario to exercise his challenges meaningfully and to obtain a fair and impartial jury."); *Tutino*, 883 F.2d at 1133 (finding that the district court "conducted an extensive and thorough *voir dire*. Although the jurors' names, addresses, and places of employment were withheld, the jurors were questioned about their neighborhoods, marital status, employment, spouse's and children's employment, education, ethnic background, military service, and, optionally, religious background, among other things. This probing inquiry was more than sufficient to enable the defendants to exercise their challenges meaningfully, and to obtain a fair and impartial jury"); *United States v. Barnes*, 604 F.2d 121, 140 (2d Cir. 1979) ("As long as a defendant's substantial rights are protected by a Voir dire designed to uncover bias as to issues in the cases and as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal.").

Because the Court will take the precaution of giving the jurors a neutral explanation for the precautionary measures it is employing and will conduct a detailed *voir dire*, the Court finds that the defendant will be protected from any potential prejudice that may stem from using an anonymous and partially sequestered jury.[6]

---

[6] In opposition to the government's motion, the defendant asserts that "there is no evidence that any of the protections put in place by the court have ever actually protected defendants" because "in spite of all of the protections put into place to ameliorate the effects of [an] anonymous jury, no MS-13 case before this

*See Gotti*, 459 F.3d at 345 ("[The defendant] does not argue that reasonable precautions were not taken to minimize prejudicial effects. Nor can he, as the precautions set forth in *Paccione*—conducting a thorough *voir dire* and providing the jurors with a plausible and nonprejudicial reason for not disclosing their identities—were followed here. The district court made use of a juror questionnaire that was jointly submitted, and instructed the jury that the special precautions had been implemented to protect them from the inquiring media."); *Quinones*, 511 F.3d at 296 ("Defendants do not contend that the district court failed to take adequate procedural precautions to ensure that they were not prejudiced by the selection of an anonymous jury, nor would the record support such an argument. The district court's *voir dire* was sufficiently detailed to compensate for jury anonymity, and the court couched its jury instruction regarding anonymity in such a way as to avoid intimating that defendants posed any risk to persons or to the judicial process." (citations omitted)).

For these reasons, the Court is satisfied that these reasonable precautions will minimize any prejudicial effects on the defendant and will ensure that her fundamental rights are protected.

---

court or in this district has ever resulted in an acquittal for any defendant on any single count." (Opp. at 3.) Not only is the defendant's contention factually inaccurate regarding the verdicts in prior MS-13 cases, *see United States v. Edwin Hernandez*, No. 12-CR-063 (JFB) (E.D.N.Y. Feb. 17, 2015) (Dkt. No. 456) (acquitted on four counts), but there is no basis to conclude that the guilty verdicts in those cases resulted from anything other than the strength of the evidence presented at trial that proved those defendants' guilt beyond a reasonable doubt.

C. Partial Sequestration

In addition to the empanelment of an anonymous jury, the government also moves for partial sequestration of the jury by having jurors utilize the employee parking lot and rear entrance. For the same reasons that support the empanelment of an anonymous jury, the Court finds that a partially sequestered jury is also warranted. To the extent that permitting jurors to utilize the employee parking lot and rear entrance might potentially prejudice the defendant, the Court finds that such prejudice can be avoided by using the same neutral instruction that will be given to the jury regarding anonymity. *See Amuso*, 21 F.3d at 1265 ("In effectuating its sequestration order, the court told the jury that sequestration was necessary to protect the jury from being tainted by pretrial publicity. By giving the jury a neutral explanation for why sequestration was necessary, the court decreased the probability that the jury would infer that Amuso was guilty or even dangerous, thereby preserving the presumption of innocence.").

Additionally, for the same reasons set forth above, the Court concludes that, while the jurors are in the courthouse, they will be provided with a separate space in which to eat lunch (if they choose to do so) and the Court Security Officers will escort them both to and from the lobby to the jury room each day.

The Court notes that sequestration measures that are similar to, or even more intrusive and extensive than, those being utilized here have been adopted by other district courts and affirmed by the Second Circuit. *See, e.g., Blackshear*, 313 F. App'x at 342–43 (affirming empanelment of anonymous jury and order that jurors eat lunch together and be accompanied in and out of courthouse by U.S. Marshals);

*Wilson*, 493 F. Supp. 2d at 400 (ordering juror sequestration during travel to and from the courthouse and recesses); *United States v. Locasio*, 357 F. Supp. 2d 558, 564 (E.D.N.Y. 2005) (ordering jurors be transported to and from "an undisclosed central location" to the courthouse by U.S. Marshals each day and that jurors be "escorted by the United States Marshals to and from any locations at which they may recess for lunch, when they are not lunching in the jury room").

In short, for the strong reasons the Court found warranting protection of the jury through anonymity, as discussed *supra*, the Court finds that allowing the jurors to utilize the employee parking lot and rear entrance of the courthouse (in addition to the other above-referenced courthouse measures) are modest and necessary procedures to ensure juror protection and trial integrity. The defendant's right to a trial by a fair and impartial jury will be adequately protected by using a neutral and non-prejudicial explanation to the jury.

## II. CONCLUSION

As set forth orally on the record during the pretrial conference and for the reasons set forth herein, the government's motion for an anonymous and partially sequestered jury is granted in its entirety.

SO ORDERED.

/s/ Joseph F. Bianco

JOSEPH F. BIANCO
United States Circuit Judge
(sitting by designation)

Dated: November 15, 2024
Central Islip, New York

\* \* \*

The United States is represented by Breon Peace, U.S. Attorney, Eastern District of New York, 610 Federal Plaza, Central Islip, New York 11722 by Paul G. Scotti, Justina Geraci, and Megan E. Farrell, Assistant U.S. Attorneys. Defendant Leniz Escobar is represented by Jesse M. Siegel, Law Office of Jesse Siegel, 299 Broadway, Suite 800, New York, New York 10007 and N. Keith White, Keith White, PLLC, 198A Rogers Avenue, Brooklyn, New York 11225.